UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nathaniel Doku,

    Plaintiff,

v.                                                                   Civil No. 09-353 (JNE/JJG)
                                                                   ORDER

Hennepin Health Care Systems, Inc.,
d/b/a Hennepin County Medical Center,
Barbara Brian, Joanne Sunquist,
and Blair Johnson,

    Defendants.

---

Nana Amoako, Esq., Nana Amoako Law Office, appeared for Plaintiff Nathaniel Doku.

Martin D. Munic, Esq., Hennepin County Attorney's Office, appeared for Defendants Hennepin Health Care Systems, Inc., d/b/a Hennepin County Medical Center, Barbara Brian, Joanne Sunquist, and Blair Johnson.

---

      Nathaniel Doku brought this action in state court against Hennepin Health Care Systems, Inc., d/b/a Hennepin County Medical Center (HCMC), Barbara Brian, Joanne Sunquist, and Blair Johnson (collectively, Defendants), asserting claims under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.41 (2008); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2006); and 42 U.S.C. §§ 1981, 1983 (2006). Doku also asserts several common-law claims. Defendants removed the action to this Court on February 13, 2009. The case is before the Court on Defendants' motion to dismiss eight of the twelve counts in the Complaint. For the reasons set forth below, the Court grants Defendants' motion.

### I.     BACKGROUND

      Doku, a black man of Ghanaian descent, began working at HCMC as an Information Technology (IT) Specialist in 1998. He was promoted to the position of Senior IT Specialist in

1

2002 and held that position until his termination on June 1, 2007.  Doku alleges in his Complaint that he had "generally favorable" performance reviews between 1998 and 2004.  In April 2005, Doku's supervisor was transferred to another position.  IT Director Brian and Chief Information Officer Sunquist, both Caucasian women, offered the Acting IT Supervisor position to Johnson, a Caucasian man.  Doku alleges that he was better qualified for the position than Johnson and that Brian and Sunquist offered the position to Johnson without posting the vacancy.

Doku complained to the IT Human Resources Manager that Brian and Sunquist had discriminated against Doku based on race by giving the Acting IT Supervisor position to Johnson without posting the vacancy.  Doku alleges that Johnson began harassing him shortly after Johnson assumed the Acting IT Supervisor position and that the harassment increased after Doku complained to the IT Human Resources Manager.  Specifically, Doku alleges that Johnson reviewed his performance four times in one year, reprimanded him for "chronic unsatisfactory job performance problems," and suspended him.  Doku claims that the reprimand, suspension, and reviews were baseless.  Doku also alleges that Johnson, Brian, and Sunquist reassigned his work to Caucasian employees or employees who were born in the United States, refused to send him to training on a replacement IT system, and excluded him from meetings related to a new IT system.  Finally, Doku alleges that Defendants terminated him while hiring new workers and retaining or reassigning less-senior employees and contract workers, all of whom are Caucasians or were born in the United States.

Doku reported the harassment and discrimination to HCMC.  Doku alleges that HCMC, Brian, and Sunquist knew of and supported Johnson's harassment and intentionally ignored Doku's complaints about harassment and discrimination.

Doku asserts claims for race and national origin discrimination under Title VII and the MHRA, harassment and reprisal/retaliation under Title VII and the MHRA, aiding and abetting discrimination in violation of the MHRA, conspiracy, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), defamation, and wrongful termination, as well as claims under 42 U.S.C. §§ 1981, 1983. Defendants move to dismiss the defamation, conspiracy, section 1981, wrongful termination, IIED, NIED, and Title VII claims.[1]

## II. DISCUSSION

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept a complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Midwestern Mach., Inc. v. Nw. Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999). Although a complaint need not contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### A. Wrongful Termination

Doku asserts a claim for wrongful termination in violation of public policy on the grounds that his termination was motivated by racial and national origin discrimination and by his complaint to his employers about discrimination. Defendants, characterizing this claim as a claim under Minn. Stat. § 181.932 (2008) (Whistleblower Act), contend that this claim is barred

---

[1] At the hearing on Defendants' motion to dismiss, Doku expressly abandoned his Title VII, section 1981, and conspiracy claims. The Court dismissed those claims with prejudice at the hearing.

by *Williams v. St. Paul Ramsey Medical Center*, 551 N.W.2d 483, 485-86 (Minn. 1996) (holding that the MHRA exclusivity provision set forth in Minn. Stat. § 363A.04 bars the separate maintenance of a claim under the Whistleblower Act). The Court's review of the Complaint indicates that Doku asserts a common-law claim for wrongful termination, not a claim under the Whistleblower Act.[2] Doku claims his termination violated policies against discrimination and retaliation in the workplace as set forth in Title VII and the MHRA, the policy favoring whistleblowing expressed in the Whistleblower Act, and a Hennepin County seniority policy.[3]

In *Phipps v. Clark Oil & Refining Co.*, 408 N.W.2d 569 (Minn. 1987), the Minnesota Supreme Court recognized a common-law cause of action for wrongful termination in violation of public policy. This common-law cause of action applies only to situations where an "employee is discharged for refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law." *Phipps*, 408 N.W.2d at 571; *see also Krutchen v. Zayo Bandwidth Ne., LLC*, 591 F. Supp. 2d 1002, 1016 (D. Minn. 2008) ("The [wrongful termination] common law claim recognized in Minnesota, however, is a very narrow one. To state a claim for common law wrongful discharge, the employee must show that he or she was discharged for refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law." (quotation marks omitted)). Here, Doku alleges that he was terminated based on his race and national origin and because he complained about discrimination to his employer. Doku also contends that his

---

[2]  The Whistleblower Act does not preclude common-law wrongful discharge claims. *Nelson v. Productive Alternatives, Inc.*, 715 N.W.2d 452, 453 (Minn. 2006).

[3]  Although Doku references a Hennepin County seniority policy, counsel for Doku stated at the hearing on Defendants' motion that Doku was not asserting a claim for breach of contract based on the seniority policy under the doctrine set forth in *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983).

4

termination violated a Hennepin County seniority policy. Because Doku does not allege that he was terminated for refusing to participate in an activity that violated state or federal law, he fails to state a claim for common-law wrongful discharge under the narrow cause of action recognized in *Phipps*. In the absence of any supporting authority, the Court declines to recognize a new common-law theory of wrongful termination based on discrimination and retaliation or on a violation of a seniority policy. The Court dismisses Doku's common-law wrongful termination claim.

**B.     Defamation**

Doku asserts that Defendants defamed him because Johnson wrote in November 2006 that the "reason for [Doku's] suspension is chronic unsatisfactory job performance" and Doku was required to publish this statement under the compelled self-publication doctrine set forth in *Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876, 888 (Minn. 1986). Defendants respond that they are absolutely immune from liability for defamation based on this statement because the details of Doku's suspension were public information under the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. §§ 13.01-.99 (2008).

"Persons who disclose public personnel data are entitled to an absolute privilege from defamatory actions," and have "absolute immunity from suit for defamation." *Fieno v. State*, 567 N.W.2d 739, 741 (Minn. Ct. App. 1997). The MGDPA designates as public data "the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action, excluding data that would identify confidential sources who are employees of the public body." Minn. Stat. § 13.43, subd. 2(a)(5). A "final disposition" of a disciplinary action occurs when the government entity makes its final decision about the disciplinary action, regardless of the possibility of any later proceedings or court proceedings.

5

*Id.* § 13.43, subd. 2(b). The final disposition of Doku's suspension occurred no later than June 1, 2007, the date of Doku's termination. *See Fieno*, 567 N.W.2d at 742 ("The fact of the matter, however, is that [plaintiff's] termination was also a 'final disposition' of a disciplinary action."). Accordingly, information documenting the basis for Doku's termination, including the reason for his suspension, is public data. *See id.* In addition, the challenged statement qualifies as public data because it evidences complaints or charges against an employee of a government entity. *See* Minn. Stat. § 13.43, subd. 2(a)(4) (designating as public data "the existence and status of any complaints or charges against the employee, regardless of whether the complaint or charge resulted in a disciplinary action"); *Fieno*, 567 N.W.2d at 742 n.6 ("We note also that the written reprimand and performance evaluation would be considered public documents under Minn. Stat. § 13.43, subd. 2(a)(4)."). Defendants are absolutely immune from liability for defamation based on the challenged statement because it is public data.[4] *See Fieno*, 567 N.W.2d at 742. The Court dismisses Doku's defamation claim.

C.  **Intentional Infliction of Emotional Distress**

Defendants contend that Doku's IIED claim should be dismissed because Doku did not allege facts rising to the level of extreme and outrageous conduct required to succeed on such a claim. Doku responds that the conduct alleged in the Complaint is outrageous enough to withstand a motion to dismiss.

To prevail on a claim for IIED under Minnesota law, a plaintiff must establish that (1) the alleged conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe. *Hubbard v. United Press Int'l*,

---

[4] Doku's reliance on *Bauer v. State*, 511 N.W.2d 447 (Minn. 1994), is unpersuasive because the issue of whether the alleged defamatory statements were public data was not raised in *Bauer*.

*Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). "The operation of this tort is sharply limited to cases involving particularly egregious facts," *id.* at 439, and the conduct in question "must be 'so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community,'" *id.* (quoting *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 n.3 (Minn. 1979)). "Liability for intentional infliction of emotional distress does not extend to 'insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 865 (Minn. 2003) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Doku alleges that Defendants engaged in the following conduct: evaluating his performance four times in one year, reprimanding him for "chronic unsatisfactory performance," suspending him, refusing to train him on a replacement IT system, excluding him from meetings related to a new IT system, reassigning his work, and terminating him. The alleged conduct fails to meet the high standard required to succeed on a claim for IIED. *See id.* at 868 ("[A]n employer's criticism of an employee's job performance, even if intended to harass, does not constitute extreme and outrageous behavior."); *Hubbard*, 330 N.W.2d at 439-40 (finding employment discipline, verbal and written criticism, and accusing employee of "chickening out" of trip insufficient). The Court dismisses Doku's IIED claim.

**D.      Negligent Infliction of Emotional Distress**

To establish a claim for NIED, Doku must show that he was within a zone of danger of physical impact, that he reasonably feared for his safety, and that he suffered severe emotional distress with accompanying physical manifestations. *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 408 (Minn. 1998). Defendants contend that Doku fails to state a claim for NIED because he did not allege that he was in a zone of danger. Doku responds that the

Minnesota Court of Appeals created an exception to the "zone of danger" requirement when there is a "direct invasion" of a plaintiff's rights, such as through defamation, in *Bohdan v. Alltool Manufacturing Co.*, 411 N.W.2d 902, 907 (Minn. Ct. App. 1987).

The Court is bound by the decisions of the Minnesota Supreme Court when deciding a matter of Minnesota law. *See Eichenwald v. Small*, 321 F.3d 733, 736 (8th Cir. 2003). To the extent that the Minnesota Supreme Court has not addressed an issue, the Court must determine the Minnesota Supreme Court's probable decision on the issue by reference to its analogous case law, relevant decisions of Minnesota's lower courts, and "other potentially elucidating state law materials." *See id.* Doku asks the Court to adopt the *Bohdan* exception, while Defendants respond that several courts in this District have concluded that the Minnesota Supreme Court would not extend liability for NIED to cases involving a direct invasion of a plaintiff's rights, *e.g.*, *Shqeirat v. U.S. Airways Group, Inc.*, 515 F. Supp. 2d 984, 1004 (D. Minn. 2007) (stating that "the reasoning in *Bohdan* is unsound and contradicts well-settled Minnesota Supreme Court precedent"); *Meyer v. Tenvoorde Motor Co.*, 714 F. Supp. 991, 994-96 (D. Minn. 1989) ("In conclusion, the *Bohdan* exception undermines clear precedent limiting negligent infliction of emotional distress to those within the zone of danger, and the exception is without foundation in the cited cases."). In light of the Minnesota Supreme Court's refusal to extend liability for NIED beyond those within the "zone of danger of physical impact" in *Stadler v. Cross*, 295 N.W.2d 552, 553-55 (Minn. 1980), and for the reasons stated in *Meyer*, the Court concludes that the Minnesota Supreme Court would not extend liability for NIED beyond "zone of danger" cases to

cases involving a direct invasion of a plaintiff's rights. The Court declines to adopt the *Bohdan* exception.[5]

Defendants also contend that Doku fails to state a claim for NIED because he did not allege any physical manifestations of his emotional distress. Physical injury is a requirement for an NIED claim. *See Dornfeld v. Oberg*, 503 N.W.2d 115, 118 (Minn. 1993). Doku alleged "severe emotional distress, mental anguish, humiliation and embarrassment" in his Complaint, but did not allege any resultant physical symptoms. At the hearing on Defendants' motion, counsel for Doku stated that Doku was unable to allege physical symptoms because he was still undergoing diagnosis by a physician. The Court discerns no reason why the absence of a medical diagnosis prevents Doku from alleging any physical symptoms he suffered as a result of Defendants' alleged conduct, all of which occurred no later than June 2007. The Court dismisses Doku's NIED claim.

### III.  CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss [Docket No. 2] is GRANTED.

2. Counts II, IV, V, VI, VII, IX, XI, and XII of Doku's Complaint are DISMISSED WITH PREJUDICE.

Dated:  June 4, 2009

                                              s/  Joan N. Ericksen
                                              JOAN N. ERICKSEN
                                              United States District Judge

---

[5] Even if the Court followed *Bohdan*, the Court's dismissal of the defamation claim would require dismissal of the NIED claim. *See Lee v. Metro. Airport Comm'n*, 428 N.W.2d 815, 824 (Minn. Ct. App. 1988) (affirming dismissal of NIED claim asserted under *Bohdan* based on dismissal of defamation claim).